UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CAMERON MAYFIELD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:15-cv-00409-WTL-MJD |
| MCCOY, | ) ) ) |
| Defendant. | ) |

**Entry Granting Defendant's Motion for Summary Judgment
And Directing Entry of Final Judgment**

Plaintiff Cameron Mayfield, an Indiana state prisoner, alleges that his civil rights were violated. Specifically, Mr. Mayfield alleges that on March 1, 2015, at 5:40 a.m., Officer Iain McCoy was responsible for admitting offenders into the 11 South dormitory ("11 South") at Putnamville Correctional Facility ("Putnamville") during a mass movement following breakfast. During this time, offender Branden French was able to enter 11 South, even though it was not his assigned dorm. Mr. French then proceeded to beat and injure Mr. Mayfield.

Mr. Mayfield alleges that Officer McCoy's actions violated his Eighth Amendment rights and state tort law. Mr. McCoy seeks summary judgment as to the claims alleged against him. Counsel was recruited to assist the plaintiff.[1] For the reasons explained below, Officer McCoy's motion for summary judgment, Dkt. No. 57, is **granted.**

---

[1] This Court is grateful for the work of Blake Shelby, Dean Brackenridge and Jennifer Schuster of Frost Brown Todd, LLC, in representing the plaintiff at the court's request.

## I. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

## II. Undisputed Facts

Officer McCoy was hired to work at Putnamville on December 1, 2014.

On March 1, 2015, Mr. Mayfield was housed in the "11 South" dormitory at Putnamville. 11 South is an "open" dormitory, which means that any offender within the dormitory has physical access to the other offenders.

When it is time to eat, the officer on duty in 11 South calls for chow movement, opens the door and allows the offenders to leave their dormitory to go to the cafeteria. Before the offenders leave for the cafeteria they are supposed to line up. As the offenders leave the dormitory, the officer should record each offender's name and compare the offender's identification with the bed board roster. On March 1, 2015, offenders incarcerated in Putnamville had identification cards that they were supposed to wear attached to their clothing.

When offenders return to the dormitory, the officer should check the offender's name and compare the offender's identification with the bed board list. During mass movements, however, it is much harder to do these checks, as a majority of offenders assigned to that housing unit are leaving and returning at the same time.

On March 1, 2015, at approximately 5:40 a.m., Officer McCoy opened the 11 South doors to allow offenders to return from chow.

Prior to March 1, 2015, Officer McCoy was not trained to check offender identification during mass movements. Officer McCoy did not check the identification of offenders entering 11 South following breakfast on March 1, 2015. Officer McCoy was not aware that Mr. French had entered 11 South during the return chow movement.

Mr. Mayfield did not go to chow that day; instead he continued sleeping. When Mr. Mayfield woke up, Mr. French told him to jump down from his bunk bed. Mr. French said something to Mr. Mayfield, but Mr. Mayfield does not remember what was said. Mr. French did not say anything that gave Mr. Mayfield a reason to understand why Mr. French attacked Mr. Mayfield. Mr. Mayfield told Mr. French that he did not know what Mr. French was talking about. Mr. Mayfield jumped down from his bed and Mr. French hit Mr. Mayfield on top of the head. Some other offenders pulled Mr. French away from Mr. Mayfield.

Mr. Mayfield then went to use the restroom. Mr. French followed Mr. Mayfield to the restroom and beat Mr. Mayfield upside his head and mashed his head against the wall. Mr. French left the restroom and attacked two other offenders. The attack occurred on the C-side of 11 South.

Officer McCoy was still in the dormitory when the attack occurred, but Officer McCoy was sitting at the desk on the D-side. No one yelled to Officer McCoy that there was a fight. Officer

McCoy was not aware of the incident, or that Mr. French had entered 11 South until he was notified upon his return to the facility for his next shift the following work day.

After Mr. French's attack, Mr. Mayfield went to the other side of the dormitory and talked to his uncle. Mr. Mayfield's uncle told Mr. Mayfield to notify Officer McCoy, but Officer McCoy had already been relieved from his duty by Officer Willett.

Some offenders tried to shield Mr. French so that he could leave the dormitory without being detected, but Correctional Officer Willett discovered Mr. French. Officer Willett and Sgt. Lowe escorted Mr. French out of the dormitory.

After Mr. French was escorted out of the dormitory, Mr. Mayfield notified Officer Willett that he had been attacked. Officer Willett and Sgt. Lowe escorted Mr. Mayfield to the medical department.

Mr. Mayfield has no idea why Mr. French came into the dormitory and attacked him. Mr. Mayfield had never met Mr. French before the attack. Before this incident, Mr. Mayfield had never been attacked in prison. Before this incident, Mr. Mayfield had never received threats from anyone. Mr. Mayfield never told anyone that works for the Indiana Department of Correction that he had a problem with Mr. French. There was not any way for Officer McCoy to know that Mr. French was going to attack Mr. Mayfield.

Officer McCoy did not intentionally allow Mr. French into the dormitory, but instead made a mistake due to his lack of experience with facial recognition of offenders assigned to 11 South. Officer McCoy testified, that "whenever you work a dorm enough you start recognizing your offenders that are regularly . . . in that dorm, and it just becomes easier to run the dorm whenever you can recognize them by face and name." Officer McCoy attributed his failure to check the

identifications when he did not know the offenders' faces to a "lack of experience in that situation." Officer McCoy testified that he was directed to watch security footage of the incident involving Mr. Mayfield and Mr. French, "to show [him] that [he] made a mistake, and [he] needed to learn and improve upon it." Officer McCoy also testified that he received a written reprimand resulting from this incident.

At the time of this incident, Officer McCoy was not even aware of who Mr. French was. As Officer McCoy did not know Mr. French, Officer McCoy was not aware that he created a risk to any offender in 11 South. Officer McCoy was not aware of any issues between Mr. French and Mr. Mayfield.

At the time of the altercation, Officer McCoy was not aware that there was any risk to Mr. Mayfield from any other offenders. Officer McCoy testified that he now checks offender identification if he does not already recognize the offender. Mr. McCoy testified that he believes that officers check offenders' identifications to ensure that offenders are in the right places, to help keep offenders safe, and to prevent incidents such as the one between Mr. Mayfield and Mr. French from happening.

### III. Discussion

Mr. Mayfield brings two claims as a result of the March 1, 2015, incident in which he was attacked by Mr. French. First, Mr. Mayfield alleges that Officer McCoy failed to protect Mr. Mayfield in violation of Mr. Mayfield's Eighth Amendment rights. Second, Mr. Mayfield alleges a state law negligence claim against Officer McCoy.

**A. Eighth Amendment**

Mr. Mayfield alleges that Officer McCoy failed to protect him in violation of his Eighth Amendment rights. This claim is brought pursuant to 42 U.S.C. § 1983. Mr. Mayfield asserts Officer McCoy's failure to stop Mr. French from entering 11 South following breakfast resulted in Mr. French attacking Mr. Mayfield.

Not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Seventh Circuit has repeatedly held that deliberate indifference is not a strict liability standard requiring jail officials to ensure the safety of their inmates. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003).

Prison officials have a duty to protect those in their custody from violence at the hand of other inmates. But liability of a prison official for failure to protect an inmate only materializes if the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (*quoting Farmer*, 511 U.S. at 837 (1994)). Thus, a claim that a prison official was deliberately indifferent to such a risk has both an objective and a subjective component. First, the harm to which the prisoner was exposed must be an objectively serious one. *See Gevas*, 798 F.3d 475 (being stabbed by cellmate constitutes serious harm); *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005) ("a beating suffered at the hands of a fellow detainee ... clearly constitutes serious harm").

Second, the subjective prong of the deliberate indifference claim "requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable; specifically, he 'must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw that inference.'" *Gervas*, 798 F.3d at 481 (*quoting Farmer*, 511 U.S. at 837). In addition to knowing that the inmate faced a substantial risk of serious harm, an official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847; s*ee also Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

There is no dispute that the harm to which Mr. Mayfield was subjected was objectively serious. The parties' dispute instead focuses on the subjective prong of the deliberate indifference claim, which requires that the official must have actual knowledge of the risk in order to be held liable.

### *1. Actual Knowledge*

In this case, there is no dispute that Officer McCoy did not have actual knowledge of any risk to Mr. Mayfield. There is no evidence that Officer McCoy could have known that there was a chance that Mr. French would attack Mr. Mayfield. Mr. Mayfield never met Mr. French before the attack and has no idea why Mr. French came into the dormitory and attacked him. In addition, Officer McCoy did not have actual knowledge that Mr. French posed a risk to anyone in the dormitory. Before this incident, Mr. Mayfield had never been attacked, or even threatened, in prison. Finally, Officer McCoy was not aware of any general or specific risk to Mr. Mayfield.

### *2. Failure to Check Identifications*

Mr. Mayfield argues that "a prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, supra, at 843. He suggests that Mr.

7

McCoy's failure to check Mr. French's identification card creates a material fact in dispute regarding whether Officer McCoy ignored an obvious risk to Mr. Mayfield.

Mr. Mayfield's argument is rejected in this instance, because there is no evidence to contradict Officer McCoy's claim that he did not intentionally allow Mr. French into the dormitory and that he made a mistake by not checking Mr. French's identification and denying him entry. Prior to March 2, 2015, Officer McCoy was not trained to check inmate identifications during mass movements. In addition, there is no evidence that Officer McCoy's actions contradicted the Indiana Department of Correction's policies. *But see Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996) ("Ignoring internal prison procedures does not mean that a constitutional violation has occurred.").

Instead, all the evidence points to Officer McCoy being negligent. Negligence is not sufficient to sustain a claim of deliberate indifference. To demonstrate "deliberate indifference," the plaintiff must prove that the defendant acted with more than mere inadvertence, negligence, gross negligence, or even recklessness in a civil context. *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995). "Mere negligence (for example if a prison guard *should* know of a risk but does not) is not enough to state a claim of deliberate indifference under the Eighth Amendment." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

The evidence reflects that on March 1, 2015, Officer McCoy inadvertently allowed Mr. French to enter 11 South. Inadvertent conduct is insufficient to justify the imposition of liability. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (citing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)). *See also Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) ("At most, any failure to review the logbooks would be characterized as negligence, which is insufficient to constitute

deliberate indifference.") "Exercising poor judgment, however, falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). Under these circumstances, Officer McCoy is entitled to judgment as a matter of law as to the Eighth Amendment claim alleged against him.

### *3. Qualified Immunity*

Because there was no constitutional violation, Officer McCoy's assertion that he is entitled to qualified immunity need not be discussed further. Officer McCoy's motion for summary judgment as to the claim of deliberate indifference is **granted.**

### B. State Law Negligence Claim

Mr. Mayfield also brings a state law claim against Officer McCoy based on a negligence theory. Officer McCoy seeks judgment as a matter of law as to this claim, stating that the Indiana Tort Claims Act bars a claim against an individual employee.

"Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment." *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014). "In fact, a lawsuit against a government employee in his personal capacity must specifically allege that the employee acted outside of the scope of his employment or that the employee's act or omission was criminal, malicious, willful and wanton, or calculated to benefit the employee personally." *McConnell v. McKillip*, 573 F. Supp.2d 1090, 1103 (S.D. Ind. 2008) (citing Ind. Code § 34–13–3–5(c)).

Mr. Mayfield claims that Officer McCoy is not entitled to immunity on the state law claims because his actions were willful and wanton. "'The elements of willful or wanton misconduct are: (1) the defendant must have knowledge of an impending danger or

9

consciousness of a course of misconduct calculated to result in probable injury; and (2) the actor's conduct must have exhibited an indifference to the consequences of his conduct.'" *Frazee v. Dearborn Cty. Sheriff's Dep't*, 2017 WL 4650874, at *10 (S.D. Ind. Oct. 17, 2017) (*quoting Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204–05 (Ind. Ct. App. 2011) (internal citations and quotation marks omitted)).

Officer McCoy argues that his actions do not satisfy either element. This Court agrees. There is no evidence that Officer McCoy knew what he was doing was incorrect. Mr. McCoy had not been trained to check prisoners' identification during mass movements. And, the only thing Officer McCoy would have realized is that he was letting a large group of offenders into a dormitory—when he was supposed to be letting a large group of offenders into a dormitory.

Officer McCoy did not have knowledge of an impending danger, nor a "consciousness of a course of misconduct calculated to result in probable injury." Specifically, Officer McCoy was not aware of French's identity, was not aware of any issues between French and Mayfield, and was not aware that there was any risk to Mayfield from any other offenders. Under these circumstances, a reasonable fact-finder could not conclude that Officer McCoy acted willfully or wantonly toward Mr. Mayfield.

In addition, the evidence reflects that Officer McCoy was acting within the scope of his employment. "To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (*quoting* Restatement (Second) Agency § 229 (1958)). Officer McCoy was authorized to identify offenders and allow them back into the dormitory. Because Officer McCoy's "actions are clearly within the scope of his employment as a

[correctional] officer and therefore are cloaked with immunity under ITCA." *Ball v. Jones*, 52 N.E.3d 813, 821 (Ind. Ct. App. 2016).

Accordingly, Officer McCoy's motion for summary judgment is **granted** as to the state law negligence claim.

### IV. Conclusion

The Defendant's Motion for Summary Judgment is **GRANTED.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/9/18

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

CAMERON MAYFIELD
178522
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All Electronically Registered Counsel